UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JOHN KACY JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:09CV76SNLJ |
| ) | |
| CARL HEFNER, SHERIFF OF ) | |
| STODDARD COUNTY, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants Carl Hefner, Craig Bolin, Tommy Horton, and Tim McCoy's motion for summary judgment (#31), filed December 22, 2010. Responsive pleadings have been filed, and this matter is now ripe for disposition.

**I.     Case Summary**

Plaintiff, an inmate at the Missouri Eastern Correctional Center, claims that when he was confined at the Stoddard County Jail and in the care and control of Stoddard County Jail employees, the defendants failed to provide him with necessary medical treatment for his broken foot and psychiatric conditions in violation of both 42 U.S.C. § 1983 and state law.  The following facts are undisputed, except where indicated.

**A.     Plaintiff's Orthopaedic Condition**

On the night of May 19, 2008, plaintiff escaped from the Stoddard County Jail by accessing and then jumping off the roof of the jail.  Plaintiff injured his left foot when he jumped off the roof, and he ultimately was taken back into custody by the Stoddard County Sheriff's

Department on May 20, 2008. Before being transported back to the jail, the plaintiff was transported to Missouri Southern Healthcare. At Missouri Southern Healthcare, plaintiff's left foot was examined by a doctor, and x-rays were taken of his foot. Plaintiff was diagnosed with a calcaneus fracture and discharged with instructions to follow up with his primary care doctor. Medical records indicate that "no distress noted on [discharge]." Plaintiff was prescribed Ibuprofen for pain and transported to the Stoddard County Jail.

Pursuant to instructions given to the defendants by Missouri Southern Healthcare, plaintiff was transported to his primary doctor's office on May 28, 2008. Plaintiff's doctor, Dr. Alam, prescribed Tramadol and provided plaintiff with samples of that drug. Dr. Alam also recommended that the plaintiff to be seen by an orthopaedic surgeon in Cape Girardeau. That day, the plaintiff was transported directly to the Saint Francis Medical Center emergency room in Cape Girardeau, where plaintiff's foot was x-rayed. Plaintiff was referred to Dr. Knight, an orthopaedic surgeon at Orthopaedic Associates in Cape Girardeau.

Dr. Knight examined plaintiff's foot on May 29 at his office and diagnosed a "[w]ell-aligned calcaneus fracture." Dr. Knight put plaintiff's left leg into a short leg, non-weight-bearing cast, prescribed Hydrocodone, and scheduled a follow-up examination in two weeks. Dr. Knight examined plaintiff again two weeks later, on June 12, and he scheduled another follow-up appointment for two weeks later. Two weeks later, on June 26, plaintiff was again examined by Dr. Knight, who noted that the x-ray taken during that visit "[s]hows good position and healing of the fracture." Dr. Knight wanted to examine plaintiff again in one month. On August 8, plaintiff was again examined by Dr. Knight, who observed (according to the medical records) that plaintiff had "been walking on [his left foot] for a week so therefore he has been noncompliant." Dr.

Knight recommended that plaintiff undergo an EMG, which was performed by Dr. Burns of Orthopaedic Associates on August 20. Dr. Burns recommended that plaintiff continue using his walking boot, continue using crutches, and follow up with Dr. Knight. Plaintiff was transferred to the custody of the Missouri Department of Corrections on September 18, 2008.

### B. Plaintiff's Psychiatric Condition

At the time plaintiff was in Stoddard County's custody, he was under the care of psychiatrist Dr. Waltrip. Plaintiff was taken to see Dr. Waltrip on July 1 and August 14, 2008. Dr. Waltrip had prescribed, and plaintiff received, Paroxetine, Wellbutrin, Cymbalta, Clonazepam, Temazepam, Oxcarbazepine, Trileptal, and Trazodone while incarcerated at the Stoddard County Jail.

### C. Plaintiff's Prescription Medication

Plaintiff admitted at his deposition that, while incarcerated at the Stoddard County Jail, he received the following medications according to the Prisoner Medication Record:

- <u>Psychiatric medications</u>: Paroxetine at breakfast from May 18 to June 15; Wellbutrin at breakfast and supper from August 15 to September 18; Cymbalta at breakfast from July 1 to July 9 and at bedtime July 16 to August 8; Clonazepam four times per day from August 23 to September 18; Temazepam at bedtime from July 1 to September 17; Oxcarbazepine three times per day from August 24 to September 18; Trileptal three times per day from May 17 June 17; and, finally, Trazodone at bedtime from May 17 to September 17.

- <u>Pain medication</u>: Ibuprofen three times a day from May 20 to May 30; Hydrocodone four times per day from May 30 to June 6; and Tramadol at breakfast

from May 28 to June 12.

Plaintiff states in his deposition that "[m]y only two complaints were the two pain pills that Dr. Knight wrote for my broken foot, and that was the Tramadol and the Ultracet. And when Dr. Knight called in all my medications to the pharmacy and my wife went and got them and ran off with them, I never got any of them, either." Plaintiff also stated that he did not receive certain psychiatric medication prescribed by Dr. Waltrip: "I didn't get the Klonopin, I didn't get the Restoril, didn't get the Trazodone, didn't get the Trileptal, I didn't get either the Wellbutrin or the Paxil." Plaintiff does not provide support for those allegations, however.

The only support plaintiff does provide are three affidavits executed by fellow inmates at the Stoddard County Jail in August and September 2009. Those affiants state that they witnessed plaintiff request his prescription medication, but they state that he was denied his medication. One affiant states that he never saw plaintiff receive any of the medication he was prescribed. Defendants object to plaintiff's reliance on those affidavits because plaintiff did not disclose them as part of his Rule 26 voluntary disclosures (which were made in October 2010), and defendants request that the Court strike the affidavits for that reason. Those affidavits, however, contradict plaintiff's own sworn deposition testimony (in which he admitted that the Prisoner Medication Record was accurate), and the Court will disregard them.

## II.   Summary Judgment Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing

factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Federal Rule Civil Procedure 59(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

**III. Discussion**

Defendants request that the Court enter summary judgment in their favor on each of plaintiff's claims. Those claims will be discussed in turn below.

### A. Eighth Amendment Claim

Plaintiff's complaint states that he wants the Court to enter a declaratory judgment that the conduct of defendants Hefner, Horton, Bolin, and McCoy constituted cruel and unusual punishment under the Eighth Amendment. "The Eighth Amendment does not apply to pretrial detainees, but the Due Process Clause of the Fourteenth Amendment imposes analogous duties on jailers to care for detainees." *Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010). As a result, all of plaintiff's federal claims will be reviewed under the Fourteenth Amendment.

### B. Fourteenth Amendment Claims

Plaintiff also claims that the defendants violated his right to due process as protected by the Fourteenth Amendment. To establish a constitutional violation based on inadequate medical care, the plaintiff must show that the defendants were deliberately indifferent to a serious medical need. *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009); *see also Christian*, 623 F.3d at 613 (applying the deliberate indifference framework to a due process violation analysis under the Fourteenth Amendment for claims brought by a pretrial detainee). "Deliberate indifference has both an objective and a subjective component." *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). The objective component requires a plaintiff to demonstrate an objectively serious medical need. *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006). A "serious medical need" is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d. 778, 784 (quoting *Camberos v. Branstad*, 73 F.3d. 174, 176 (8th Cir. 1995)); *see also Simmons v. Cook*, 154 F.3d. 805, 807-08 (8th Cir. 1997) (quoting *Moore v. Jackson*, 123 F.3d. 1082, 1086 (8th Cir. 1997)("A medical need is serious if it is obvious to the layperson or

supported by medical evidence.")).

In order to satisfy the subjective component of his medical claim, the plaintiff inmate must show that the defendants knew of, yet deliberately disregarded, an excessive risk to the inmate's health. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting *Logan v. Clarke*, 119 F.3d. 647, 649 (8th Cir. 1997)). A prison official may be liable if he knows that an inmate faces a substantial risk of serious harm and fails "to take reasonable measures to abate it." *Coleman*, 114 F.3d. at 785 (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). The plaintiff must establish a "mental state akin to criminal recklessness." *Vaughn v. Gray*, at 908 (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). Moreover, to create an actionable constitutional violation for delay in treatment, "the information available to the prison official must be such that a reasonable person would know that the inmate requires medical attention, or the prison official's actions (or inaction) must be so dangerous to the health or safety of the inmate that the official can be presumed to have knowledge of a risk to the inmate." *Plemmons v. Roberts*, 439 F.3d 818, 823 (8th Cir. 2006). Delay must be prompted by "obduracy and wantonness, not inadvertence or error in good faith," before liability may be imposed. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff claims that defendants were deliberately indifferent to his objectively serious medical need by (1) failing to treat his broken foot appropriately; (2) failing to provide him with prescribed pain medications; and (3) failing to provide him with prescribed psychiatric medications.

### 1. Plaintiff's Broken Foot

While defendants concede that plaintiff's broken foot was, as a general matter, an

objectively serious medical need, they contend that they obtained the necessary medical attention for that need, and that their actions did not exhibit deliberate indifference to plaintiff's need. First, before the defendants put plaintiff in jail, plaintiff was brought to the emergency room at Missouri Southern Healthcare, where he was treated and told to follow up with his primary doctor. Eight days later, plaintiff was brought to see his regular doctor, who said he needed to be seen in Cape Girardeau. Plaintiff was immediately brought to Saint Francis Medical Center's emergency room in Cape Girardeau, where he was referred to an orthopaedic surgeon, Dr. Knight. Plaintiff was brought to see Dr. Knight at Orthopaedic Associates the next day, and then plaintiff had three follow-up appointments with Dr. Knight. Plaintiff was also brought to Orthopaedic Associates a fifth time for an EMG. Thus, between May 20 and September 18, defendants saw that plaintiff visited medical professionals at least eight times for treatment of his foot.

Plaintiff contends, however, that a doctor at Missouri Southern Health told defendant Horton that plaintiff needed to see an orthopaedic surgeon immediately. The Court cannot and will not consider any alleged statements made by the doctors to defendant Horton because they are inadmissible hearsay, and the Court may consider only admissible evidence. *See Howard v. Columbia Public School District*, 363 F.3d. 797, 801 (8th Cir. 2004). Moreover, plaintiff's medical records indicate that the emergency room's instructions were to follow up with plaintiff's primary doctor and that plaintiff was being returned to the jail. Nothing in those records indicate that the emergency room personnel instructed anyone to seek additional care immediately for the plaintiff. Plaintiff has not provided the Court with any reason to believe that he required further immediate attention on May 18, and the eight-day delay in bringing plaintiff to see his primary care doctor in no way appears to have been prompted by "obduracy and wantonness," as required

by the United States Supreme Court in *Whitley*, 475 U.S. at 319. *See also Plemmons*, 439 F.3d at 823.

Even if plaintiff could show that defendants had been deliberately indifferent to some need for additional care, plaintiff has not shown that the eight-day delay in seeing his primary doctor had a detrimental effect on his prognosis. "[A]n inmate alleging that a delay in treatment constitutes a constitutional deprivation must produce medical evidence to establish that the delay had a detrimental effect." *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) (citing *Crowley v. Hedgepeth,* 109 F.3d 500, 502 (8th Cir.1997)). Plaintiff has not providing any verifying medical evidence to support his suggestion that the eight-day delay in seeing Dr. Alam caused harm. For all of the foregoing reasons, plaintiff's claim fails as a matter of law.

### 2. Plaintiff's Pain Medication

Plaintiff claims that his constitutional rights were violated because he was denied two medications — Tramadol and Ultracet — prescribed by Dr. Knight. The defendants maintain that the plaintiff was provided with prescribed medications for his foot while at the jail, that the facts establish that defendants did not deliberately disregard plaintiff's condition, and that, at best, any failure to provide the two medications amounts to mere negligence — which is not sufficient to demonstrate that defendants deliberately disregarded a serious medical need.

Defendants' Exhibit Q is plaintiff's Prisoner Medication Record for the time he was at the Stoddard County Jail. Plaintiff admitted in his deposition that the Record was accurate. The Record shows that plaintiff received an Ibuprofen pill three times per day between May 20 and May 30 (when the prescription ran out); Hydrocodone pills four times per day between May 30 and June 6 (when the prescription ran out); and a Tramadol pill once per day between May 28 and

June 12 (when the samples ran out). Although there is no record showing that the plaintiff received either the Tramadol that Dr. Knight allegedly prescribed on June 12, or the Ultracet that Dr. Knight prescribed on June 26, plaintiff's deposition indicates that plaintiff's wife picked up those prescriptions and that she "ran off with them." Plaintiff was provided with prescription pain medication for over three weeks — including one week of narcotic pain medication. Any failure to provide the Tramadol and Ultracet in addition to those medications was at best negligent and, therefore, not sufficient to show that defendants deliberately disregarded plaintiff's serious medical needs. Because the Eighth Circuit has long held that a showing of deliberate indifference requires something greater even than gross negligence, *Gibson*, 433 F.3d at 636, no genuine issue of fact exists for trial here.

### 3. Plaintiff's Psychiatric Medication

Plaintiff's claims regarding his psychiatric medication is similarly flawed. Plaintiff maintains that he was, at the time of his incarceration at the Stoddard County Jail, on a myriad of psychiatric drugs, all of which were allegedly prescribed by Dr. Waltrip. Looking again to plaintiff's Prisoner Medication Record for the time he was at the Stoddard County Jail, which the plaintiff admitted in his deposition was accurate, that Record shows that plaintiff received Paroxetine from May 18 to June 15; Wellbutrin from August 15 to September 18; Cymbalta from July 1 to July 9 and July 16 to August 8; Clonazepam from August 23 to September 18; Temazepam July 1 to September 17; Oxcarbazepine from August 24 to September 18; Trileptal from May 17 June 17; and, finally, Trazodone from May 17 to September 17. Plaintiff fails to specifically identify what psychiatric medications he claims he did not receive, nor does he provide the dates defendants allegedly failed to provide those medications. Plaintiff does not

provide any facts regarding his psychiatric condition in his statement of facts. In his response brief, plaintiff states only that "[f]inally, Plaintiff did not receive his psychiatric medication" without providing details or support.

Plaintiff received numerous psychiatric medications throughout his four-month stay at the Stoddard County Jail. Plaintiff also admits that he was taken to see his psychiatrist on July 1 and August 14, 2008. As the nonmoving party, the plaintiff bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson*, 477 U.S. at 249. Because plaintiff has not set forth any such facts setting out what drugs he did not receive or how defendants were deliberately indifferent to his serious medical condition, summary judgment will be granted to the defendants on this issue.

### C. State Law Claims

Plaintiff claims that defendants also violated Section 221.120 RSMo., which states that "[i]f any prisoner confined in the county jail is sick and in the judgment of the jailer, requires the attention of a physician, dental care, or medicine, the jailer shall procure the necessary medicine, dental care or medical attention necessary or proper to maintain the health of the prisoner."

The defendants argue that because the statute applies only to the "jailer," under their reading, the statute applies only to the sheriff — defendant Hefner — and thus all the other defendants are entitled to summary judgment.

The Court, however, need not address that issue because, for the reasons discussed above, no genuine issue of material fact exists with respect to whether the defendants failed to "procure the necessary medicine...or medical attention necessary or proper to maintain the health of" the plaintiff. Plaintiff admits he was administered myriad medications daily and at prescribed

intervals. Plaintiff admits he was brought to see doctors ten times during his four-month incarceration. Plaintiff has supplied the Court with no contrary, specific facts to rebut those facts supplied by the defendants. His vague statements and denials that contradict his own testimony are not sufficient to establish a genuine issue of material fact.

## IV. Conclusion

Summary judgment will be granted to the defendants on all of plaintiff's claims. Accordingly,

**IT IS HEREBY ORDERED** that defendants Carl Hefner, Craig Bolin, Tommy Horton, and Tim McCoy's motion for summary judgment (#31), filed December 22, 2010, is **GRANTED**.

**IT IS FURTHER ORDERED** that judgement is hereby entered in favor of the defendants.

Dated this   22nd   day of March, 2011.

_____
UNITED STATES DISTRICT JUDGE